# 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊

### PAUL WRIGHT V. SAM OSBORNE.

June 10, 1940.

Record No. 2222.

Present, All the Justices.

The opinion states the case.

*H. P. Burnett,* for the plaintiff in error.

*W. G. Werth,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Paul Wright, a guest, instituted this action against Sam Osborne, his host, to recover damages for personal injuries received in a collision between two automobiles. After all the evidence had been introduced the trial court sustained defendant's motion to strike. This ruling is the only error assigned in the petition for a writ of error.

On November 12, 1938, about 4:30 p. m., defendant, with three passengers—plaintiff on the front seat and the other two on the rear—was driving his car in a westerly direction on Route 58 from "New River Tavern" to Galax. Immediately preceding defendant's car and going in the same direction were two other cars and a truck. As the four ve-

hicles were going up-grade and entering an "S" curve extending for approximately 370 yards, defendant, traveling at 45 miles an hour, pulled his car out of the line of westbound traffic and to the left of the center of the highway with the apparent intention of passing the three vehicles ahead. At the point where this movement was made, the vision to the west was so obstructed by the grade in the highway and the curve that he could not see a sufficient distance ahead to permit the passing of the cars in safety.

J. B. Vaughan, driving his car in an easterly direction over the same highway, after he entered the "S" curve from the west, saw defendant's car turn to the south of the center of the highway when it was approximately 100 yards from him. He immediately pulled to his right and, with his right wheels some two feet to the right of the south edge of the hard surface, brought his car almost to a stop. The defendant's car, without checking its speed, crashed into the front of the Vaughan car and went through a fence into a field on the south side of the highway. Both cars were badly damaged and plaintiff sustained the injuries for which he seeks compensation.

The Legislature has adopted a number of measures for the safety of the users of the highway. Among them are sections 61 (b) (2) and 71 of the Motor Vehicle Act, Acts 1938, ch. 84. Section 61 (b) (2) defines reckless driving to be where "any person * * * , while driving a vehicle, overtake and pass another vehicle proceeding in the same direction, upon or approaching the crest of a grade or upon or approaching a curve in the highway, where the driver's view along the highway is obstructed." Section 71 provides that "the driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety, * * * ."

The evidence for plaintiff tends to show that defendant violated the two sections quoted, which, standing alone,

convicts him of negligence. However, chapter 285 of the 1938 Acts of Assembly provides that no gratuitous guest in an automobile "shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or wilful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." This act is but the legislative approval of the doctrine applied in *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77; *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63; *Young* v. *Dyer,* 161 Va. 434, 170 S. E. 737; *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837.

In *Thornhill* v. *Thornhill,* 172 Va. 553, 2 S. E. (2d) 318, we quoted with approval from *Altman* v. *Aronson,* 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185, 1187, the following: "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. * * * . It falls short of being such reckless disregard of probable consequence as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is, or ought to be, known to have a tendency to injure."

Stated in somewhat different terms, gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. There is no sharp, well-defined, dividing line between simple negligence and gross negligence. The distinction is one of degree.

Motor vehicles in this streamline age are necessities to a large majority of citizens. Properly driven, they are reasonably safe both to the occupants and to others. The common experience of users of the highway is that it is extremely dangerous to guests as well as others for an operator to drive his car to the left of the center of the highway, around a curve, or over a grade when his vision

for a reasonable distance ahead is obstructed. It is equally dangerous for an operator to drive his car to the left of the center of a much traveled highway without keeping a proper lookout ahead for oncoming traffic. Such acts tend to reveal an utter disregard of the dictates of prudence. They display a reckless disregard of consequences. The jury could have found that the voluntary acts of defendant, under the conditions described, unnecessarily and unreasonably increased the hazard of travel to plaintiff.

The defendant's account of the accident, and the events immediately preceding it, is that he was following the vehicles at a speed of about 45 miles an hour, and "as he started up the grade the sun hit him squarely in the eyes and blinded him, and that he put on his brakes and something went wrong and the collision occurred; that he did not see the Vaughan car at all until the instant of impact; that he was not trying to pass the car ahead of him; that further than this he is unable to explain the accident."

Two disinterested witnesses saw defendant from the moment that he pulled out of the line of westbound traffic to the left of the center of the highway until the impact. Neither of them observed any check in the speed of defendant's car or noticed anything wrong with its mechanism. Four other westbound travelers on the highway at the time stated that the sun did not interfere with their vision, and two of them stated that the sun did not interfere with or bother them in operating their motor vehicles.

The trial court committed reversible error in its failure to submit the question of gross negligence to the jury.

*Reversed.*